SOMMERYILLE, J.
This proceeding is in the nature of a concursus, and is the outgrowth of the case decided by us bearing the same title as does this, and reported in 133 La. 317, 62 South. 938.
A full statement of the case is found in the opinion of the court above referred to. It was for the recovery of certain real- property which had been wrongfully adjudicated to the defendant Whitmer after it had been once adjudicated by the sheriff to me plaintiff, Dunlap. After the decision in that case Dunlap, plaintiff, paid to the sheriff of the parish of St. Landry the amount called for in the writ under which the property had been offered and sold, together with interest, costs, and attorney’s fees, and taxes for the year 1909. There was then left in plaintiff Dunlap’s hands $42,016.75, which amount has been deposited by him in the registry of the court, under the petition in this ease setting forth briefly that there were sundry liqns, mortgages and claims resting on the property, which were in excess of the balance of the amount due by him, and that he was unable to determine to whom the said amount belonged. He accordingly cited the alleged creditors to assert their claims, and prayed for judgment holding said deposit to be the excess of the said Dunlap’s obligation in the premises, and ordering the cancellation and erasure of all mortgages, liens, and privileges against the property on the records of the recorder’s office of the parish of St. Landry, and that a reasonable fee be allowed his attorney for services in provoking the concursus.
The defendants cited, together with other persons asserting claims, appeared and filed answers. Robert F. Whitmer and O. W. Lamar, two of the defendants, in their answer resisted most of the demands of plaintiff. From an adverse judgment they have appealed. The Ohio Savings Bank & Trust Company, representing itself to be trustee of certain bondholders whose bonds were secured by a second mortgage on the property involved, claimed the whole fund for the purpose of administering it for the bondholders whom it represented. It also appeal-' ed from an adverse judgment. The other defendants in the cause have not appealed, and their claims are not before us-for review; except in so far as appellants complain of that portion of the judgment appealed from *795 which gave to the First National Bank of Defiance, Ohio, judgment for certain coupons which had been previously separated from the bonds to which they had been attached, where the bank was not the holder of the bonds from which the coupons had been detached.
Appellants ask in this court that plaintiff, who provoked this concursus by depositing the fund to be distributed in court, should be condemned to pay interest on said amount from the time that the property Was adjudicated to him, but which was not delivered to him by the sheriff until within a short time before he deposited the amount in court. But appellants did not claim interest on said fund in their answers filed in the trial court, and it cannot be allowed. O. P. arts. 553, 157. Appellants argue that the claim for interest was covered by the prayer for “general relief”; but this is not the law, as has just been pointed out, especially where interest is not the legal consequence of the claim which is being urged.
Defendants Whitmer and Lamar claim certain amounts, with interest, paid by them for delinquent taxes on the property, assessed in the name of the then owners, for the years 1904, 1906, 1907, and 1908. They allege and show that they were second mortgage creditors, who were interested in the preservation of the property which was offered for sale by the state to enforce the collection of said taxes, and that the payments by them of these taxes to the state, which had superior liens and privileges, preserved the property for the benefit of all creditors who had rights upon and against the property. r
The plea of prescription of three years was filed to the claims for the several amounts of said taxes, and it was'sustained.
There is no 'evidence in the record going to show that Mr. Whitmer or Mr. Lamar paid the amount claimed for taxes on the property for the year 1904. The written subrogation on the reverse side of the tax receipt for 1904 shows that the amount was paid by E. W. Sutherlin and F. A. I-Iilley, administrator of the succession of T. W. Holbert. There is found in the record an affidavit made by Benjamin W. Kernan covering the amount paid by him for account of Whitmer for taxes on the property for the-year 1900, in which affiant further states:
“That the said R. F. Whitmer had previously paid to E. W. Sutherlin and the estate of J. W. Holbert the taxes, interest, and penalties on said' property for the year 1904, amounting to the sum of $1,520.79, said property being- then assessed in the name of Latannier Land & Improvement Company, as will appear from the receipt hereunto annexed and as part hereof.”
The testimony of Mr. Kernan on this point is hearsay, and no receipt from Sutherlin and the estate of Holbert was attached to-the affidavit showing that they had received from Whitmer any money whatever. The claim for these taxes was properly rejected.
[1] The plea of prescription of three years to the claims-of all of the liens and privileges for taxes was urged and sustained, under the provision of article 186 of the Constitution which is as follows:
“Tax liens, mortgages, and privileges, shall lapse in three years from the 31st day of December, in the year in which the taxes are levied,” etc.
In paying the taxes of 1906 Mr. Whitmer apparently asked to be subrogated to the rights of the state, and the following appears on the face of the tax receipt:
“Subrogation on reverse of said receipt. Paid by Whitmer, R. L. Wiggins, Tax Coll. 4/29/07.”'
But there is no act of subrogation on the reverse of said tax receipt.
Whitmer made claim April 22, 1910, by the-filing of an intervention and third opposition in the foreclosure proceedings filed by him against C. W- Krotz, the former owner of the property, and asked that the amounts paid by him for the taxes of 1904 and 1906 be paid. *797 to him out of the proceeds of the sale of the property. And he now claims that the filing and service of said intervention interrupted the prescription of tax liens and privileges of the state as fixed in article 186 of the Constitution, to which liens and privileges he had heen subrogated. But the intervention was not filed within three years from the 31st day of December in the year in which the taxes were levied; and the liens and privileges for the taxes of 1904 and 1906 had lapsed prior to April 22, 1910, the date of the filing of the intervention claiming the taxes.
There was no attempted interruption of the prescription of the liens and privileges for taxes for the years 1904, 1906, 1907, and 1908 in the petition of intervention; and the judgment thereon did not recognize any. The judgment appealed from will be affirmed on this point.
It is observed that the judgment on the third opposition recites that Whitmer had paid the taxes for the years 1904, 1906, 1907, and 1908, and the sheriff of the parish was ordered to pay the amounts of these taxes out of the proceeds of sale. But no recognition of the liens and privileges of the state for taxes was asked for or allowed. It is also observed that said sheriff, together with defendant Chas. W. Krotz, were the only parties made defendants in the third opposition filed by Whitmer, and that Krotz and the sheriff accepted service of the petition. The cocreditors of Whitmer were not made parties. A judgment was rendered on the same day that the petition was filed, April 22, 1910. The judgment on the intervention was not impleaded, and it is without effect as to the other defendants now before the court.
While Whitmer claims under the written subrogations made by the tax collector to him, as to which he sought to interrupt prescription by the filing of the third opposition referred to, he also claims under article 2161, C. C., which provides that:
“Subrogation takes place of right:
“(1) For the benefit of him who, being a preferred creditor, pays another creditor whose claim is preferable to his by reason of his privileges or mortgages,” etc.
But under this article he would take only what the state, the preferred creditor, had, which were liens and privileges prescriptible in. three years.
Appellant also invokes article 3226, C. C., and claims reimbursement under it of the amounts paid by him for the taxes of 1904, 1906, 1907, and 1908; but that article has reference to one in possession of the property of another, upon which he has incurred expenses for its preservation, and not tó a mortgage creditor, like Whitmer; who was not in possession when the taxes of 1904, 1906, 1907, and 1908 were paid. The article of the Code has no application.
Regarding the claim of R. F. Whitmer for the amounts paid by him for the taxes for the years 1910, 1911, and 1912, with interest, while he was in possession of the property and it was assessed to him, as owner, the finding of the court is not the same. These taxes were not paid by Whitmer for the purpose of preserving the property on which the taxes were due for the benefit of his cocreditors. On the contrary, had he (Whitmer) not taken illegal possession of the property as owner, the selling price of that property, to wit, $80,000, would have been paid by the purchaser at the date of the adjudication to him, and the latter would have become the owner of the property in 1910, and the taxes falling due thereon would have been due by him. In such event the defendants in this suit would have received their pro rata share in the distribution which would have been made in 1910. Instead of Whitmer having preserved the property for his codefendants, he sought to 'take possession thereof by paying $45,000, the amount of his bid, which was also the amount of his lien, and that would have left nothing for distribution *799 .among the other defendants. These amounts for taxes cannot be paid out of the fund to be distributed.
But the property did not belong to Whitmer, although the title was in his name and he paid taxes thereon for the years mentioned. The property belonged to Dunlap, plaintiff, during this time, and he should have paid the-taxes.. Whitmer makes a claim, in the alternative, against Dunlap, for the amount of taxes paid during these three years, and he is entitled to judgment therefor.
Plaintiff argues that, as purchaser of the property, he was willing to take title at the time of the adjudication to him in the year 1910, but that defendant Whitmer prevented him from so doing, and that, as he has not been put in default by Whitmer, he cannot be held for the expenses which may have been incurred by Whitmer for the preservation of the property by paying the taxes thereon. He relies on article 2555, C. C., which has application to vendors and vendees, where a purchaser neglected and failed to obtain delivery of the thing sold. But Whitmer was not the vendor of the property, although he was plaintiff in execution of the writ under which the property was sold. By the adjudication to him by the sheriff Dunlap took the rights and claims of the seized debtor in and to the thing adjudged. C. P. 690. Judicial sales are governed by the articles of the Code of Practice on the subject.
[2] The law applicable to the case is found in C. C. 2314, which says:
“He to whom property is restored must refund to the person who possessed it, even in bad faith, •all he has necessarily expended for the preservation of the property.”
Whitmer’s title was void, and he may have held in bad faith; but the taxes he paid while he was the record owner and in possession were paid in virtue of a void title, and they were not due by him. Nevertheless the taxes were paid for the preservation of the property, and the owner must refund the amount paid by Whitmer. C. C. 3226.
The judgment appealed from is erroneous in not awarding to Whitmer, on his reconventional demand against Dunlap, the amounts of the taxes for the years 1910,1911, and 1912, with legal interest from the respective dates of payment.
[3] Regarding the $500 which is allowed in the judgment to be paid out of the fund on deposit in the registry of the court for attorney’s fees to plaintiff, who provoked this concursus, the finding of the trial court will be reversed.
This is not the ordinary concursus, provoked by a disinterested party, a mere stakeholder, who was without fault. On the contrary, plaintiff had a substantial and direct interest in the subject-matter of the litigation. He alleged in his petition that Whitmer,. one of the defendants, claimed the taxes of 1910, 1911,. and 1912, and he asked the court to determine whether those taxes should be paid out of the fund deposited by him in court or not. Whitmer reconvened and claimed the amount of the taxes from Dunlap, and he is entitled to a judgment therefor.
The proceeding is in the nature of a concursus, and is similar to the bill of inter-pleader known to the equity practice. Such a plea must negative any interest in the thing in controversy, and call upon defendants to set forth their several titles, and interplead, settle, and adjust their demands among themselves. Its object is usually to settle conflicts among creditors to or upon a certain fund. The plaintiff in the cause being indifferent, the duty of his solicitor is ended as such when the bill is filed. But, if it is shown that the interpleader has an interest in the fund to be distributed, he may not recover the amount of the fee for his solicitor.
In the case of Groves v. Sentell, 153 U. S. 465, 485, 14 Sup. Ct. 898, 905, 38 L. Ed. 785, which was appealed from the Circuit Court *801 of the United States, Eastern District of Louisiana, and where the law of this state was being applied, the court say on this point:
“The general rule is that a party who has an interest in the subject-matter of the suit cannot fill a bill of interpleader, strictly so called. In fact, the assertion of perfect disinterestedness is an essential ingredient of such a bill, * * *
“Though it was allowable when so situated to file a bill in the nature of a bill of interpleader (Bedell v. Hoffman, supra [2 Paige (N. Y.) 199]), we think it clear that his (Sentell’s) ultimate interest prevents him from being allowed his solicitor’s fee from the fund dedicated to the payment of the mortgage, thereby diminishing the security of the mortgage creditor.”
[4] And the direct and substantial interest of Dunlap in the fund to be distributed prevents him from being allowed a fee for his attorney.
Regarding the claim of the First National Bank of Defiance, Ohio, one of the defendants, to be paid its pro rata on bonds with coupons attached, and also on coupons separated from other bonds, which latter bonds the bank did not hold, a plea of prescription of five years as to the detached coupons has been filed in this court, and the case will be remanded for' the trial of this' plea. The record does not show when all of these detached coupons matured.
The other appellant, the Ohio Savings Bank & Trust Co., asks for a reversal of the judgment appealed from in denying to it the custody of the fund to be distributed among the mortgage bondholders, for whom it had been appointed trustee under a deed of trust. The trustee bases its demand for the custody of this fund, and for authority to pay attorney fees for distributing it, on the allegation that it has been made, by contract, or trust deed, the trustee of the bondholders—
“to collect the said bonds, coupons, and interest by the terms of said mortgage,” and “for the reason that the holders of the said bonds may be, and doubtless are, numerous, and residing in different states, beyond the jurisdiction of this court, for which it would be impracticable for the fund to be distributed according to law and in accordance with the rights of the bond and coupon holders in any other manner.”
The trustee is in error in alleging that the holders of the bonds may be, and doubtless are, numerous, and beyond the jurisdiction of the trial court. On che contrary, the record shows that bonds to the extent of $200,-000 have been, or may have been, issued, and that all the bonds are represented in this proceeding by the holders thereof, six in number, except $5,675 worth. All of these parties, with the small exception just referred to, are before the court making demands for their respective shares in the fund which has been deposited in the court to be distributed among them.
Besides, the deed of trust between the appellant and the bondholders does not authorize it to intervene and claim a fund which was created by another, and not by it. It did not foreclose upon the mortgage, at the request of a stipulated number of bondholders, as it was authorized to do in the deed, and it did not create the fund actively or passively. The bondholders before the court did not request the trustee to act for them; and there is no allegation that the small number of absent bondholders have made such a request.
The jurisdiction of the court over this proceeding is not questioned; and it is the clear duty of the court to make the distribution which it has been called upon to make to defendants.
It would be violative of the rights of the parties in interest now before the court to order this long-delayed and much-litigated distribution to be further delayed and litigated,, at additional expense, over their protest, and to deliver it to. another, in a foreign jurisdiction, to be there distributed. The trustee is not representing the 90 per cent, of the bondholders who are in court demanding their property.
*803 The judgment appealed from will not be disturbed in this respect.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended:
(1) By allowing the reconventional demand of Robert F. Whitmer against James E. Dunlap for the several amounts paid by him for the taxes of the years 1910, 1911, and 1912, with legal interest from the respective dates of payment by Whitmer to the date of payment by Dunlap.
(2) By making the costs incurred on the trial of the reconventional demand of Whitmer against Dunlap in the district court payable by said James E. Dunlap.
(3) By ordering the payment to the Ohio Savings Bank & Trust Company, trustee, the pro rata shares of the bondholders who are not represented in this suit
(4) By striking therefrom the allowance of $500 to E. B. Dubuisson, attorney, as a fee.
It is further ordered, adjudged,' and decreed that that portion of the judgment recognizing the claim of the First National Bank of Defiance, Ohio, for detached coupons now held by it be reversed; and the case is remanded to the district court for the sole purpose of determining whether said coupons are prescribed or not, and whether or not they shall participate in the distribution of the fund to be distributed in this proceeding.
As thus amended, the judgment appealed from is affirmed, costs of appeal to be paid by James E. Dunlap.
PROVOSTY, J., dissents in part, and hands down reasons. See 69 South. 193.