(102 So. 417)

No. 26566.

BOYLAN'S DETECTIVE AGENCY & PROTECTION POLICE v. ARTHUR A. BROWN & CO. (United States Rubber Export Co. et al., Interveners.)

(Nov. 3, 1924. Rehearing Denied Dec. 1, 1924.)

*(Syllabus by Editorial Staff.)*

1. Bailment ⬤⟝18(3)—One supplying watchman for property in possession of another not entitled to privilege.

Under Civ. Code, arts. 3224–3226, one supplying watchman against fire or theft of property on wharf in possession of owner's agent has no privilege thereon.

2. Property ⬤⟝9—Intervener required to establish ownership with reasonable degree of certainty.

Interveners, resisting assertion of lien and privilege on property, need establish ownership only with reasonable degree of certainty.

3. Bailment ⬤⟝18(3)—Statutory privilege granted only to one in possession and incurring expense for preservation of property.

Under Civ. Code, § 3226, giving privilege to one incurring charges for preservation of property, privilege is conferred only on one in possession of property of another on which he has incurred expenses for preservation; article 3262 not purporting to grant privilege.

4. Liens ⬤⟝7—Privilege granted only in pursuance of law, and not from considerations of equity.

Privileges are not allowed, except when expressly granted, and only by virtue of compliance with requisites essential to their creation and existence, and cannot be extended by analogy or implications, or through considerations of equity.

5. Estoppel ⬤⟝88(1)—Asking for writ of sequestration by one claiming privilege held judicial admission that possession was in another.

Asking for writ of sequestration by one claiming privilege, under Civ. Code, arts. 3224–3226, for furnishing watchman for property was judicial admission that possession was in another, defeating claim of privilege.

Certiorari to Court of Appeal, Parish of Orleans.

Action by Boylan's Detective Agency & Protection Police against Arthur A. Brown & Co., in which the United States Rubber Export Company and the Manufacturera Nacional, S. A., intervened. On application of intervener for writs of certiorari and review, to review judgment of Court of Appeal, affirming judgment for plaintiff. Judgments amended.

Dart & Dart, of New Orleans, for intervener U. S. Rubber Export Co.

Monroe & Lemann and Nicholas Callan, both of New Orleans, for intervener Manufacturera, S. A.

Denegre, Leovy & Chaffe, of New Orleans, for respondent.

THOMPSON, J. The plaintiff sued the defendant Brown & Co., for $868 for watching freight while in transit, but temporarily on the Celeste street wharf in this city awaiting shipment to Havana, Cuba. Asserting a lien and privilege on the property and alleging "fears that the defendant Brown & Co. will conceal, part with, or dispose of said property in its possession during the pendency of the suit," the plaintiff caused a writ of sequestration to issue and various lots and different kinds of movable property situated on said wharf to be seized.

The two interveners named in the title, as well as others who are not before the court in this proceeding, separately intervened in the suit, claiming to be owners respectively of different lots of the property seized, and were permitted to bond the same. They denied liability for the claim made against Brown & Co., and denied that their property was subject to any privilege in favor of plaintiff.

On a trial on the merits there was judgment in favor of the plaintiff against Brown & Co. for the amount sued for, with recognition of the privilege claimed. From that judgment the United States Rubber Export

Company and the Manufacturera Nacional, S. A., prosecuted unsuccessfully an appeal to the Court of Appeal.

The case is before us for review on the application of the two interveners.

The defendant having acquiesced in the judgment, the sole contest now before the court is between the plaintiff and the two interveners, and the single issue is the question of privilege vel non.

[1, 2] There is some contention that the interveners have not made sufficient proof of ownership of the property claimed, but we think a fair appreciation of the testimony rebuts that contention, and establishes the ownership in the interveners with a reasonable degree of certainty, and that is all that the law exacts.

There is no pretense that any contractual relations existed between the plaintiff and the owners of the property. Brown & Co. was the New Orleans agent of the West Indian Navigation Company of New York, and as such agent received the consignments at the New Orleans port to be forwarded to the consignees in Cuba. When the goods arrived in New Orleans, the West Indian Navigation Company having no steamship available for immediate transhipment, the goods were unloaded from the carriers and stored on the public wharf.

The plaintiff was engaged to furnish a day and night watchman to guard the goods against possible theft or destruction by fire. We do not understand that this service was limited to any particular shipment or to any particular lot of goods, but extended to all goods on the wharf received by Brown and awaiting shipment. It is shown that Brown & Co. employed the plaintiff on behalf of the steamship company, though it is claimed that the fact of agency was not made known at the time. The bills made out by the plaintiff for the services rendered were against the ship, or Brown & Co. as agent, and not against the owners of the goods. While this is not conclusive, it is a circumstance going to show that the plaintiff looked to Brown & Co. or their principals, and not to the shippers or owners of the goods for recompense for the services. And this seems to have been the usual custom, that is to say, the agents always paid the bills incurred for watching the goods while on the wharf, on behalf of and for the steamship company, which usually provided the agent with funds for that purpose.

For some reason, not fully explained, the funds furnished Brown & Co. to meet such charges had became exhausted, and Brown was unwilling to pay the charges out of his own money.

We infer from the record that this suit presents probably the first instance in which the property itself, located on the public wharves of the city, consigned to foreign ports and awaiting transportation, has been sought to be held liable for such charges.

The plaintiff in support of its claim for a privilege relies on articles 3224, 3225, and 3226 of the Civil Code.

"Art. 3224. He who, having in his possession the property of another, whether in deposit or on loan or otherwise, has been obliged to incur any expense for its preservation, acquires on this property two species of rights.

"Art. 3225. Against the owner of the thing, his right is in the nature of that of pledge, by virtue of which he may retain the thing until the expenses, which he has incurred, are repaid.

"He possesses this qualified right of pledge, even against the creditors of the owner, if they seek to have the thing sold. He may refuse to restore it, unless they either refund his advance, or give him security that the thing shall fetch a sufficient price for that purpose.

"Art. 3226. Finally, he who has incurred these expenses has a privilege against these same creditors, by virtue of which he has preference over them out of the price of the thing sold, for the amount of such necessary charges as he shall have incurred, for its preservation. This is the privilege in question in the present paragraph."

Counsel for plaintiff concede that the precise point at issue has never been directly passed on by this court, but they argue with a great deal of earnestness that their claim to a privilege comes squarely within the terms of the Codal provisions as above noted.

The first time, so far as we are advised, that the articles quoted were considered by the court was in the case of Hyams v. Smith, 6 La. Ann. 362. The plaintiff Hyams was keeper of a slave yard in this city, and certain slaves, brought by the defendant, who had a life estate in the slaves, from Alabama, were placed in the slaveyard until such time as they could be sold. The contract with the keeper of the slaveyard was that the slaves were to perform no labor, but were to be boarded, cared for, and safely kept. The privilege was allowed.

The second case is Tom v. Ernest, 15 La. Ann. 44. In that case a privilege was claimed for preserving a slave which had been deposited with the plaintiff. The privilege was denied by the court for the reason that the slave was not a movable, and the law granting such a privilege applied to movables only.

The third case is Andrews v. Crandell, 16 La. Ann. 208. The plaintiff claimed and was allowed a privilege for keeping and feeding horses in his livery stable.

The fourth case is Powers v. Sixty Tons of Marble, 21 La. Ann. 402. The marble was stored with the plaintiff, and the charges were for taking care of and preserving the property while in plaintiff's possession. The privilege was allowed.

The next case is Dunlap v. Whitmer, 137 La. 792, 69 So. 189. That was a concursus proceeding, and two of the parties, Whitmer and Lamar, claimed certain amounts paid by them for delinquent taxes on the property in the name of the owners. They were second mortgage creditors, and were interested in the preservation of the property which was offered for sale by the state to enforce the collection of the taxes, and claimed that the payment of the taxes to the state, which had superior liens, preserved the property for the benefit of all creditors who had rights upon and against the property. They were allowed the reimbursement of taxes for the years in which they were in possession of the property, but denied the claim for the years they were not in possession; the court holding that C. C. art. 3226, only had reference to one in possession of the property of another upon which he has incurred expenses for its preservation.

In all the cases cited, the allowance of the privilege seems to have been based upon the fact that the charges were necessary expenses for the preservation of the thing and that the claimant of the privilege was in possession of the thing preserved. There is not a single case that we have been able to find where a privilege of this character has been allowed to a person who was not a de facto detainer or possessor of the property. Indeed, this seems to be the only fair and reasonable construction that can be given the language of the articles.

The three articles constitute paragraph 4 of section 2 of chapter 3 of the Code, which treats of privileges on movables, and the paragraph begins with the heading:

"Of Expenses Incurred for the Preservation of the Thing."

The first article in the very beginning lays down as the basis upon which the privilege is to be conferred, the condition precedent, as it were, the fact of possession in the claimant, and this is given added emphasis by reason of the peculiar language made use of.

"He, who," says the Code, "having in his possession the property of another, whether such possession is a deposit or a loan or otherwise, has been obliged on account of his possession and in order to preserve the thing to incur any expense * * * acquires two species of rights."

And what are the two species of rights? They are clearly defined in the second and third articles we have quoted.

The first of the two rights is a pledge against the owner, and under this pledge the pledgee may *retain* the thing *and not give it up* until he is paid. And the pledgee possesses this qualified right even against the creditors of the owner, and he may *refuse to restore it* unless such charges are paid or the creditors are willing to give security to meet them. The second species of right is that one who has incurred the expenses for preserving the thing *in his possession* has a privilege against the owner's creditors, which gives him a preference over them out of the price of the thing sold for the amount of such necessary charges as he shall have incurred for its preservation.

[3] There can be no mistake, in our opinion, of the legislative intent and meaning. The only right granted against the owner was the right of pledge, the right to hold, and there can be no pledge without possession. And how, it may be asked, could a pledgee *retain and not give up a thing* not within his possession nor under his dominion and control?

The Code may be searched in vain for any other article than the one quoted which attempts to confer a privilege for expenses incurred in the preservation of the property of another. Counsel refer to article 3262, but that article does not even purport to grant a privilege. It occurs under the title of:

"Order in Which Privileged Creditors are Paid."

It has for its predicate the article 3226, which creates the privilege.

Our conclusion is that the correct interpretation of article 3226 was made in the Case of Dunlap, supra, in which it was held that the article only confers the privilege on one in possession of the property of another up-on which he has incurred expenses for its preservation. We can see no good reason to depart from that ruling.

[4] The Court of Appeal in its opinion says:

"But it is equitable and just that the interveners and their property should pay because they alone were benefited."

No considerations of equity can enter into the determination of the right of privilege. If the law does not grant the privilege, the court is powerless to do so. The rule is too familiar to need citation of authority that privileges are never allowed, except when expressly granted, and only by virtue of compliance with the legal requisites essential to their creation and existence. They cannot be extended by analogy or by implication.

The evidence clearly shows that the property on which the claim to privilege is made was on the public wharf and in the possession of Brown & Co., agents for the steamer which was to transport the property to Cuba. There was never even the semblance of possession in the Detective & Police Agency. That agency had no dominion and no control over the property. It was not even charged with the duty of protecting the property from rain, storm, or any of the natural causes which might have destroyed or deteriorated the value of the property. The service of the agency was merely to police and patrol the public wharf, day and night, a sentinel, as it were, to watch the freight, and to guard it against the possible acts of the incendiary or the thief.

To say that such acts constituted possession of the property in the agency is completely to ignore all the rules and the facts which enter into a determination of actual and corporeal possession.

[5] But, aside from this, the plaintiff judicially admitted that the possession of the property was in Brown & Co., and that fact was made the very basis of the right to the writ of sequestration. If the plaintiff was in

possession as pledgee, then it was without right to the sequestration. If it was not in possession as pledgee, then there was no privilege. The claim to a pledge and the admission that the property was in possession of the defendant are manifestly inconsistent.

For the reasons assigned, it is ordered that the judgment of the Court of Appeal and that of the district court be and the same are amended, by rejecting the claim of privilege on the property of the interveners, and dissolving the sequestration under which said property was seized. The plaintiffs to pay the costs of this proceeding, and the defendant all other costs.

ROGERS, J., recused.