In re CANAL BANK & TRUST CO. (CITY OF NEW IBERIA, Intervener).*

No. 16351.

Court of Appeal of Louisiana. Orleans.

May 4, 1936.

Spencer, Gidiere, Phelps & Dunbar and Wood Brown, all of New Orleans, and Jacob S. Landry, of New Iberia, for City of New Iberia.

Dufour, St. Paul, Levy & Micelli and Rene J. Waguespack, all of New Orleans, for Canal Bank & Trust Co. in liquidation.

JANVIER, Judge.

This suit is brought by the city of New Iberia by way of intervention in the liquidation of Canal Bank & Trust Company. The intervener claims a lien on all of the property and assets of the bank by virtue of the provisions of section 1 of Act No. 63 of 1926, which reads as follows:

"That when any bank receives as agent (whether as agent of another bank or of any person, firm or corporation) for collection and remittance or delivery to its principal and not for deposit any bill, note, check, order, draft, bond, receipt, bill of lading, or other evidence of indebtedness, or other instrument, and collects or realizes any money on the same, and has not deposited same to the credit of said principal, the principal shall have a privilege [lien] on all of the property and assets of said agent bank for the amount so collected or realized by said agent bank."

The facts—and they are not in dispute—are as follows:

The city of New Iberia, during the early part of 1926, sold certain public utility plants which it had previously owned and operated.

There were outstanding at the time bonds issued by the city of New Iberia totaling $337,000 in face value, which bonds could not be retired before the dates of their respective maturities. On June 9, 1926, the city of New Iberia, the Canal Bank & Trust Company, a then existing bank in New Orleans, and Union Title Guarantee Company, Inc., a then existing guaranty company, entered into an agreement which had for its object the creation of a fund out of which the said outstanding bonds should be retired as they should respectively mature, and the guaranteeing by the said guaranty company to the said city that the said bonds and coupons would be so retired.

It was provided that the city of New Iberia should place in the hands of the bank $337,000 in cash and such additional amount as might be necessary to equal the face value of outstanding and unpaid interest coupons. The agreement provided that the guaranty company should invest and reinvest the moneys in the said "fund" thus created in interest-bearing obligations to be approved by the bank, and it also provided that the said obligations should be held by the bank for account of the "fund" which was thus created.

The guaranty company was given the right to change and exchange securities with the approval of the bank and the guaranty company assumed the obligation of maintaining in the said "fund" at all times a sufficient amount of cash to retire any bonds which might mature and any coupons which might become due, and the guaranty company also assumed the obligation of maintaining the said "fund" always in such condition as would permit of its retiring at their maturities all outstanding coupons and all outstanding bonds. As a consideration for the undertakings and obligations assumed by it, the guaranty company was permitted by the agreement to withdraw, from

---

time to time, such surplus amounts as might be found in the said "fund."

During the year 1932 there was, among the securities held by the bank to the credit of the "fund," bond No. M-20 of the face value of $1,000, issued by George W. Shirley and secured by mortgage on a hotel building in Gulfport, Miss.

This bond matured on October 1, 1932, together with two other bonds of the same issue, but with which we are not now concerned, since they were held by third parties not involved in this litigation.

Canal Bank & Trust Company was also trustee under the indenture granted by Shirley and, therefore, Shirley sent to the Canal Bank his check, drawn on the Whitney National Bank of New Orleans, for a sum sufficient to pay, on October 1st, all three bonds and certain interest coupons.

The proceeds of this check were collected by Canal Bank & Trust Company from Whitney National Bank and were credited on the books of the bank to the "George W. Shirley Sinking Fund Account." The bank then drew out of the "George W. Shirley Sinking Fund Account" an amount sufficient to pay the said bonds and passed this amount on its books to the credit of "George W. Shirley, Bond Account." The two other bonds held by other persons were duly presented to the bank and were paid out of the "Shirley Bond Account," but the trust department of the bank, which trust department held Shirley bond No. M-20 for account of the "fund" with which we are concerned, did not surrender that bond for payment and did not transfer from the "Shirley Bond Account" to the account of the "fund" the $1,000 which had been remitted for the purpose of paying the said bond.

This status remained unchanged until after March 2, 1933, at which time the bank was closed. After that it never reopened, but went into liquidation.

Later, all of the securities held by the bank under the three-party agreement were returned to the city of New Iberia, among them Shirley bond No. M-20. Since that time there has been paid a dividend in liquidation amounting to 35 per cent. and the city of New Iberia received $350 under an agreement which provided that acceptance of said payment of 35 per cent. should not be considered as a waiver of the right of the city to assert, by way of intervention, its claim for a lien, privilege, or preference, and for payment in full.

The liquidators of Canal Bank & Trust Company contend that, under the facts, there is no privilege granted by the act of 1926.

In the district court there was judgment rejecting the claim for preference or privilege, and from this judgment the city of New Iberia has appealed.

It is conceded, on behalf of the intervener, that under the laws of Louisiana there is created no equitable lien on the assets of a banking corporation and that the lien, privilege, or preference, if it is to be recognized, must be shown to result from the operation of the statute of 1926. Thus, the entire controversy depends upon whether the facts, as recited, bring the matter within the purview of that act.

Our attention is directed by counsel for intervener to two decisions of the Supreme Court of Louisiana, both of which are said to be apposite: In re Liquidation of Hibernia Bank & Trust Co. (Intervention of Jones County), 181 La. 335, 159 So. 576, and In re Canal Bank & Trust Co. (Intervention of Ferguson), 182 La. 45, 161 So. 15, 16, in each of which cases the lien contended for was recognized.

Let us analyze these decisions in an effort to see whether the facts of either can be said to be indistinguishable in principle from those here presented.

In the Jones County Case the intervener had sent to the Hibernia Bank & Trust Company in New Orleans a check on the Whitney National Bank and had instructed the Hibernia Bank to collect the proceeds of the check and to apply those proceeds to the payment of certain bonds, coupons, and commissions due some thirteen days later at the Hibernia Bank. The proceeds of the check were collected by the latter bank and mingled with its general funds and later the bank closed its doors, before the bonds, coupons, and commissions had become due. Therefore, at the time of the closing, the proceeds of the check were being held by the bank in its general funds and only a book entry showed that the said proceeds were being held for account of Jones county.

It was there contended by the liquidators that Jones county was not entitled to a lien because the check had been sent for collection and deposit and not for remittance. The intervener, on the other hand, contended that it had been sent for collection and remittance. The court held that, although the intervener had not required that the

proceeds be remitted back to it, the sender of the check, nevertheless it had required that those proceeds be remitted to others designated by the sender of the check, and that, therefore, the transaction came within the contemplation of the act of 1926, which grants a preference to one who sends a check or other item for collection and remittance.

That case can be distinguished from this. There Jones county had sent the check for collection and it was Jones county which claimed the preference because of the fact that the proceeds of the check, which it had sent for collection and remittance to others, had been collected but not remitted to those others. Thus, the facts tracked literally the requirements of the statute. But, looking at this case from the point of view of the sender of the check (and in the Jones County Case it was the sender of the check which made the claim), the statute can have no application because, by the terms of the indenture under which Shirley sent the check to Canal Bank & Trust Company, the collection of the proceeds by the bank, as trustee, constituted a complete discharge of his obligation. Had that not been true and had Shirley's obligation not been discharged by the collection by the bank of the proceeds of his check, he would have occupied the identical position in which Jones county found itself and he could have claimed a preference in the liquidation proceedings of the bank.

But the city of New Iberia is not in that position. It did not send the check to the bank for collection and, veiwing it, therefore, not as the sender of the check, but as the claimant to the proceeds of the check, it comes not at all within the contemplation of the statute. It will be noted that it is to the principal that a lien or privilege is given under such circumstances and that the principal, under the statute, is the person who sends the item for collection and not the person to whom the proceeds may be ultimately due. The city of New Iberia, so far as the check of Shirley is concerned, is certainly not the principal.

It is well recognized that statutes granting liens or privileges must be strictly construed.

In the syllabus of Dodd v. Horan (La. App.) 121 So. 323, appears a statement of the rule which is well established in this state:

"Under Civ.Code art. 3185, privileges are stricti juris, are not created by covenant, and can be allowed only in cases where they are expressly granted by statute or Code."

Viewing the matter from the angle which was presented in the Jones County Case, there is, then, no lien, privilege, or preference to which intervener is entitled.

But keen and alert counsel point to the Ferguson Case, supra, and argue that, viewing the matter from the point of view of the owner of the Shirley bond, which was in the hands of the bank for collection, the said owner is entitled to a lien because the said bond was left with the bank for collection out of the proceeds of Shirley's check and for remittance of those proceeds to Union Title Guarantee Company. In the Ferguson Case it appears that Mr. Ferguson had left with the bank certain coupons which were to be paid at the said bank on their maturity, the said bank being also the trustee for the payment of the said coupons. The bank, though the funds had been deposited with it for the payment of the coupons, did not remit to Mr. Ferguson the amount due him on his said coupons. It was held that Mr. Ferguson had placed the said coupons with the bank for collection and that there was nothing to show that he had authorized the bank to deposit the proceeds and that, therefore, he was entitled to a preference under the assumption that the bank should have remitted the proceeds to him.

It will be noted that the statute grants a privilege to the owner of a bond left with a bank for collection and remittance and it is argued that the Shirley bond, owned by the city of New Iberia, was left with the bank for collection out of the proceeds of Shirley's check, the said proceeds not to be deposited to the credit of the city of New Iberia, but to be remitted to some one else, to wit, Union Title Guarantee Company.

The contention is a most ingenious one, but we think it overlooks the true fact that the ownership of the bond and the ownership of the account into which the proceeds should have been placed were one and the same. It may be, though we do not find it necessary to so declare, that the principle announced in the Jones County Case would have been applicable had it been true that the bond in question was owned solely and unconditionally by the city of New Iberia and that the account into which the proceeds should have been deposited was owned and controlled solely by Union Title Guarantee Company. In other words, if the

city of New Iberia had sent the bond to the bank and had instructed the bank to collect the proceeds and to place those proceeds on its own books to the credit of Union Title Guarantee Company, it may well be that, following the doctrine of the Jones County Case, we would have held that the bond had been sent for collection and remittance (to some one else), even though the remittance would have been made by depositing the proceeds in the bank itself. Such procedure might possibly have been considered as a remittance.

But such are not the true facts here. It must be borne in mind that the bond did not belong unconditionally to the city of New Iberia and that the account into which the proceeds of the bond should have been placed did not belong unconditionally to Union Title Guarantee Company. Both the bond and the bank account belonged to what may be termed the "fund" which was created when the contract was entered into on June 9, 1926. When that agreement was reached, it contemplated the creation of that "fund" and it contemplated that each of the parties to the contract should have an interest in that "fund"; in other words, that it was owned by the three parties as a sort of partnership account, or fund. The city of New Iberia no longer had the right to take possession of the securities owned by the "fund" because the Union Title Guarantee Company, by agreeing to pay the bonds, undertook obligations and, at the same time, received as protection the right to control those securities to some extent. Therefore, every security and every dollar that resulted from the sale of securities belonged to that joint "fund" and should have been kept in that joint account. The contract cannot be read in any other way than as requiring that, whenever securities of the fund should be sold, the proceeds should be deposited in that account.

Looking at the matter in that light, we find that the "fund," which owned the bond, left it with the bank that it might be converted into cash and that the cash might be deposited in the bank itself to the credit of the "fund," the same fund which owned the bond. The act of 1926 does not grant a privilege to one who sends a bond to a bank for collection, if the proceeds are to be deposited in the same bank to the credit of the sender because it specifically provides that, in order that such privilege result, the item must have been sent for remittance or delivery to its principal, and not for deposit.

It is true that this case is similar to the Ferguson Case in that in each there had been left in the possession of the bank securities payable at the bank which the bank converted, or should have converted into cash. But the similarity ends there because there the fact was, as stated by the Supreme Court:

"There is not a scintilla of evidence that the intervener, expressly or impliedly, authorized the bank to deposit the proceeds of the coupons to his account."

Here, on the contrary, the contract, as we have said, cannot be interpreted except as requiring the deposit of the proceeds to the credit of the "fund."

It is true here that the proceeds were not deposited and that to that extent the bank failed in its duty. But there is nothing in the statute which grants a privilege for mere failure of a bank to do its duty. Again we note that statutes granting liens or privileges cannot be construed liberally, nor broadened by the application of equitable considerations.

In Intervention of Clark & Co., 181 La. 856, 160 So. 609, 616, the Supreme Court said:

"In this state it is well settled that privileges are granted only in pursuance of law and not from considerations of equity, and that the one who asserts a privilege has the burden of establishing it. Boylan's Detective Agency & Protection Police v. Arthur A. Brown & Co., 157 La. 325, 102 So. 417; see, also, Ittman et al. v. Kracke & Flanders Co., 12 La.App. 672, 127 So. 106; Dodd v. Horan (La.App.) 121 So. 323; Article 3185, Civ.Code; Red River Const. Co. v. Pierce Petroleum Corp., 165 La. 565, 115 So. 752."

That the bond is now in the possession of the city of New Iberia is of no importance, but requires explanation in view of what we said concerning the control of the bond at the time of the failure of the bank. The Union Title Guarantee Company at that time was a going concern and its agreement to pay the bonds and coupons was then predicated upon its partial control over the securities forming the "fund" to which we have referred. When it passed out of existence, its obligation became valueless and all of the securities which had formed the "fund" automatically passed back into the complete and unconditional possession, ownership, and control of the city of New Iberia.

We thus conclude that the facts of this case do not bring it within the contemplation of section 1 of Act No. 63 of 1926.

Accordingly, it is ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.