WILLIAM A. CARSON and Others, as Trustees in Bankruptcy of LEONARD S. ZARTMAN and Another, Individually and as Copartners, Doing Business under the Firm Name of G. E. ZARTMAN & COMPANY, Respondents, v. FEDERAL RESERVE BANK OF NEW YORK, Appellant.*

Fourth Department, May 8, 1929.

* Revg. 133 Misc. 277.

*Walter S. Logan* and *Harris, Beach & Matson* [*Colin McLennan, Walter S. Logan* and *Keith D. Poland* of counsel], for the appellant.

*Sutherland & Dwyer* [*Arthur E. Sutherland, Samuel B. Dicker* and *Earl W. Murray* of counsel], for the respondents.

CROUCH, J. The action is by trustees in bankruptcy to recover $10,363.93 paid by the bankrupt to defendant upon the ground that such payment constituted a voidable preference under the Bankruptcy Act. The defendant is the Federal Reserve Bank in the Second Federal Reserve District. Its main office is in New York city, and it has a branch at Buffalo. The bankrupt, Zartman & Co., was a partnership doing business as private bankers in Waterloo, Seneca county, N. Y.

The facts out of which the controversy arises may be broadly stated as follows. On May 16 and 17, 1927, thirty-seven of defendant's member banks sent to defendant one· hundred and fifty-seven checks drawn on the Zartman bank by various depositors therein to the order of various payees. Eighty-eight of those checks were produced on the trial. Forty of them were indorsed " Pay to the order of Federal Reserve Bank of New York; " forty of them were indorsed " Pay to the order of any bank, banker or trust company; " six were indorsed " Pay to the order of any bank or banker; " two were indorsed " Pay to the order of any Federal Reserve Bank." The evidence does not disclose the indorsement on the remaining checks. When sending these checks to defendant, each of the thirty-seven member banks accompanied its shipment with a letter of remittance commonly referred to as a cash letter. These letters disclose a diversity in form and contents. Ten of them say in substance: " We inclose for credit." Seventeen of them say: " for collection," " collection and credit," " collection and return " " collection and remittance." The others may be said to be ambiguous, though most of them used the word " collection " in one form or another. The aggregate amount of the checks was $15,271.56.

On May 17 and 18, 1927, the defendant sent the 157 checks to the First National Bank of Waterloo, its correspondent in that village, with instructions to collect from the Zartman bank and remit. On May eighteenth and nineteenth the correspondent bank presented the checks to Zartman & Co. for payment. Thereupon Zartman & Co. drew two drafts on the American Exchange-Irving Trust Company of New York city, to the order of defendant, one for $8,699.25, covering the checks sent on May seventeenth, and the other for $6,572.27, covering the checks sent on May eighteenth. In due course the two drafts were presented for payment on May twentieth, through the New York Clearing House. Payment was refused by the drawee on the ground that the drafts were drawn against uncollected funds. The drafts were again presented for payment on May twenty-first and again payment was refused on the same ground. On the night of May twenty-second, which was Sunday, I. Ward Waters, manager of defendant's check department, went to Waterloo, where he arrived on the morning of May twenty-third. About ten o'clock that morning Waters had a talk with Zartman, and requested either that the drafts be paid in cash or that the checks for which the drafts had been given should be returned. Zartman said in substance that he would take care of the matter if he were given time. Accordingly at two o'clock that afternoon Zartman again saw Waters,

and delivered to Waters $10,363.93 in cash, and 65 checks drawn on Zartman & Co. by the Metcalf Quality Cash Market, Inc., aggregating $4,907.63, which Zartman said he refused to pay. The total amount of the cash and the checks equaled the total of the 157 checks. Zartman & Co. did not open its doors for business on May twenty-fourth. On June twenty-seventh an involuntary petition in bankruptcy was filed against the firm and its individual partners, and on September thirteenth they were adjudged bankrupts. On October seventh plaintiffs were appointed trustees in bankruptcy.

On May 19 and 20, 1927, the several items contained in the thirty-seven cash letters consisting of the 157 checks from its member banks were credited on the defendant's books to said member banks. Upon receipt of the notice by defendant that the two drafts had been dishonored, these items were charged back to those banks, and their accounts with defendant were debited with the respective amounts of such items. Except for two small items amounting to $14.97, such charging back or debiting was done on May twenty-first, twenty-second and twenty-third. On May 31, 1927, after defendant had received from Zartman the sum of $10,363.93 in cash, the defendant again credited said member banks with the respective amounts to which they were entitled by virtue of such payment. Thereafter, through withdrawals from those accounts by the several member banks, actual payment to them was made by the defendant.

The evidence further shows that the Federal Reserve Board, pursuant to powers conferred upon it by the Federal Reserve Act, had made and published certain rules and regulations referred to as regulation J, series of 1924, governing the matter of check clearing and collection between each Federal Reserve bank and its member and non-member clearing banks, which were in force and effect at the time of the transactions herein involved. Among other things, regulation J provided that a Federal Reserve bank would act only as agent of the bank from which it should receive checks; that for all checks received, the sending bank would be given immediate credit or deferred credit in accordance with a certain formulated time schedule; that the Federal Reserve banks were authorized in the collection of checks, either directly or through an agent, to accept either cash or bank drafts in payment of or in remittance for such checks without any liability for resulting loss; that they were authorized to charge back to the forwarding bank the amount of any check for which payment in actually and finally collected funds was not received; that the authority of the reserve banks to handle such checks was subject to the specified

conditions; that each member and non-member clearing bank sending checks for deposit or collection should, by such action, be deemed to have authorized the reserve bank to handle them according to such conditions; and finally, that the reserve banks themselves were authorized to promulgate rules and regulations which should be binding upon all member and non-member clearing banks sending checks to such reserve bank.

Under the authority of the last-mentioned provision the defendant had made certain rules and regulations, embraced in what is known here as circular No. 728, and that circular had been sent to all of the thirty-seven member banks above mentioned. Among other provisions therein was one to the effect that credit for checks sent in would be given in the member banks' deferred account immediately upon receipt; but that credit would be given in the members' reserve account only " when the appropriate time indicated on the current time schedule has elapsed." But " credit and availability are in all instances subject to our actual receipt of payment." The sending bank was required to indorse all checks without restriction to the order of the Federal Reserve Bank of New York or to the order of any bank, banker or trust company. The time schedule accompanying the circular was based upon the average mailing time required for items to reach the paying bank, plus the time required for the paying bank to remit to the defendant. Certain paper is mentioned as entitled to immediate credit, other paper to credit one, two, three, four, five or eight days after receipt, according to the geographical location of the drawee bank. The checks in question here were, under the schedule, available as credit two days after receipt, subject, however, in all instances, under the rules, to the actual receipt of payment.

The contention of the plaintiffs is that the defendant, on May 23, 1927, was a creditor of Zartman & Co., and had reasonable cause to believe that the cash paid its agent Waters on that day would effect a preference. They contend that the defendant had title to the 157 checks as matter of law, or that in any event, that question was one of fact; that when defendant presented the checks for payment and accepted the two drafts payable to itself, the legal relationship of creditor and debtor between itself and the Zartman bank came into existence; that even though it had been an agent merely, when the drafts were dishonored, they became primary obligations of the Zartman bank and defendant became a creditor within the meaning of section 60 of the Bankruptcy Act; and finally that in any event that section is broad enough to permit recovery against the person receiving the preferential payment, even though that person is not the beneficial creditor.

Whether the defendant was a creditor or not was, on the trial, submitted to the jury as a question of fact. The jury was told in substance that if the defendant was the owner of the checks, the drafts given in payment would make defendant a creditor; that if the checks were held as agent merely, the drafts and any moneys paid thereon would be held in the same capacity; that in such a transaction the agent is not a creditor within the meaning of section 60 of the Bankruptcy Act; that if the checks were indorsed in such a way as to confer title to the moneys when paid, defendant would be the owner of the checks and of the moneys received on them and the drafts and would, therefore, be a creditor; that a check indorsed in blank or to the order of a bank and a draft given in payment would confer title to the check and draft on the bank having possession; and the same result would follow if the checks were deposited and credit given to the sending banks. The effect of the rules and regulations embraced in regulation J, circular No. 728 and the time schedule was not referred to.

Under appropriate exceptions defendant — appellant here — questions the propriety of such submission and of the law, in part, as stated in the charge. Its contention is that as matter of law, under the evidence, it was acting throughout as agent for the member banks; that it had no beneficial interest in the checks or their proceeds; and that having paid over such proceeds to the sending banks, the action will not lie.

While it is true that defendant, though merely an agent, might have maintained an action on the dishonored drafts (*Marine Trust Co.* v. *Lauria*, 213 App. Div. 64; affd., 244 N. Y. 577), and probably would have been a competent and qualified petitioning creditor in bankruptcy (*Matter of Veler*, 249 Fed. 633), it does not follow that it was a creditor within the meaning of section 60 of the Bankruptcy Act. (See 30 U. S. Stat. at Large, 562, § 60, as amd. by 32 id. 799, 800, § 13; 36 id. 842, § 11, and 44 id. 666, § 14; now U. S. Code, tit. 11, § 96.) No case has been found in which an action under that section has been sustained against one who was not the beneficial owner of the claim or demand upon which the preferential payment was made. The language of the cases indicates that recovery may be had only against one who was legally and beneficially a creditor. (*Richardson* v. *Shaw*, 209 U. S. 365; *Taylor* v. *Carraway*, 282 Fed. 876; *Keystone Warehouse Co.* v. *Bissell*, 203 id. 652.) The essential question, then, is whether there was sufficient evidence of ownership of the checks by defendant to warrant the submission of that question to the jury. Ownership of a deposited check, without immediate purchase or advance, carries with it an absolute obligation to the depositor for the

amount. That obligation can be established only by a contract to be expressly proved or to be inferred from the facts of the particular transaction. (*Dickerson* v. *Wason*, 47 N. Y. 439.) Where the contract is to be established as an inference, the factual elements commonly considered are the form of indorsement, the letter of remittance or cash letter, if there is one, statements, if any, on a deposit slip or in a bank book, the manner in which the deposit is treated as a book entry, the immediate availability or otherwise of the deposit as a credit to be drawn upon, any relevant banking usage or custom, and any established course of dealing between the parties.

So, if paper deposited is indorsed in blank, delivered to and accepted by the bank and the amount credited so as to be immediately available, the title, in the absence of other facts, will pass. (*Metropolitan Nat. Bank* v. *Loyd*, 90 N. Y. 530.) But where the paper indorsed in blank is accompanied by a letter stating that the inclosure was for " collection and credit," the two facts are to be considered together and the effect is to make the indorsement restrictive and the bank an agent merely. (*Bank of America* v. *Waydell*, 187 N. Y. 115.) So where a deposit slip used in making deposit of a bill of lading indorsed in blank with draft attached, contained on the bottom a statement that credit for checks and drafts on other banks was subject to payment, ownership did not pass. The credit given was conditional in character and that fact was inconsistent with ownership. (*First Nat. Bank* v. *Stengel*, 169 N. Y. Supp. 217; affd., 185 App. Div. 906; affd., 227 N. Y. 659.) Again, where the deposit slip accompanying the deposit of a check contained a statement that the bank should be liable only when the proceeds in actual funds or solvent credits came into its possession and the depositor's bank book stated that the bank acted only as agent, those provisions were read into the contract. The bank was merely an agent down to the moment when solvent credits came into its possession; and then it became the debtor of the depositor. (*King* v. *Bowling Green Trust Co.*, 145 App. Div. 398.)

Whatever may be the rule in other jurisdictions (Cf. *City of Douglas* v. *Federal Reserve Bank*, 271 U. S. 489), it seems reasonably clear that in New York an unrestricted indorsement accompanied by a credit made provisional under agreement between depositor and bank, does not necessarily pass title. The instructions in the charge to the contrary were, we think, erroneous.

We may not, as the trial court seems to have done, totally disregard the effect of regulation J, circular No. 728, and the time schedule. That the dispute is between trustees in bankruptcy

of a non-member bank and a Federal Reserve bank cannot change the relationship between the latter and its member banks. Defendant's status as owner of the checks or as agent for collection depends upon the terms and conditions of its contract with the banks which sent the checks. Whether, to the mind of the Zartman bank, defendant was acting in one capacity or the other, is not material, since recovery can be had only against one who is in fact a conventional creditor. Had it been material, error was committed in excluding evidence bearing on the point.

We come, then, to a brief consideration of the contract between defendant and the sending member banks, in the light of which their acts and statements must be viewed. A mere reading of the several documents discloses at various points variations from the ordinary rules of commercial law. For instance, checks for collection may be sent direct to the bank on which they are drawn and defendant is authorized either directly or through an agent to accept in its discretion bank drafts instead of cash in payment of such checks. Running through all the provisions and expressed in various language is an unmistakable intent that defendant should assume no liability to sending member banks until payment for checks was received in actually and finally collected funds, and that until that time its relationship to the sending banks was that of agent. Upon one point only can any argument to the contrary be hung. The contract provides that immediately upon receipt of checks by defendant, credit should be given to the sending member's deferred account. That credit was not available and could not be drawn upon. At the expiration of the time stated in the time schedule, the credit should be automatically transferred to the member bank's reserve account and thereupon become available. In the absence of anything else, the defendant at that moment would ordinarily be held to have taken title. But at once follows the provision that credit and availability are in all instances subject to the actual receipt of payment. Two constructions are possible. We may say that title to the paper passes and that the additional provision merely gives a warning of a proposed means of recoupment if the credit is not collected. (Cf. *Burton* v. *United States*, 196 U. S. 283.) Or we may say that the credit was merely provisional, the passing of title being conditioned upon actual payment. Moved not only by the decisions in New York, some of which have been cited above, but also by what we think is required by the underlying purposes and policies of the Federal Reserve System, we are disposed to adopt the latter construction. So far as the contract itself is concerned, we are of the opinion that it contemplated no ownership of the checks or

their proceeds, either cash or paper, until final and actual payment in full. If, further, the acts and statements of the parties to the contract are considered, nothing will be found to have been done or said in conflict with its provisions. The unrestricted indorsements on the checks lose significance when we find that the contract required the sending member bank to indorse in that form. The varied instructions in the accompanying cash letters likewise lose all evidential value in the light of a contract provision that defendant will handle checks as cash items only in accordance with the uniform instructions therein set forth and that " any contrary or special instructions noted on cash letters or attached to checks will be disregarded."

Our conclusion is that as matter of law defendant was not the owner of the 157 checks, but held the same as an agent for the sending member banks. There was no warrant in the evidence for the submission of that question to the jury.

As to the effect of the giving and receipt of the two drafts, we agree with the law as stated in the charge. Since defendant did not own the checks, it did not own the drafts which purported to pay them. As agent it had authority to take the drafts. Its status was in no wise changed by so doing. (*Thomas* v. *Supervisors*, 115 N. Y. 47; *People's Nat. Bank* v. *Moore*, 25 F. [2d] 599.)

In view of our conclusion we deem it unnecessary to discuss the other questions argued in the briefs.

The judgment and order denying a new trial should be reversed on the law and the facts, with costs, and the complaint dismissed, with costs. The order granting an additional allowance should be reversed.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment and order denying motion for a new trial reversed on the law and facts, with costs, and complaint dismissed, with costs. Order granting an additional allowance of costs reversed.