JOHN A. HUDSON, Plaintiff in Error, *v.* THE STATE OF DELA-
WARE, Defendant in Error.

(*October* 27, 1931.)

WOLCOTT, Chancellor, PENNEWILL, C. J., RICE, RICH-
ARDS and RODNEY, J. J., sitting.

*W. W. Knowles* and *W. T. Knowles* for Plaintiff in
Error.

*Reuben Satterthwaite,* Attorney-General, and *Charles
F. Richards,* Deputy Attorney-General, for Defendant in
Error.

Supreme Court of the State of Delaware.

PENNEWILL, C. J., delivering the opinion of the Court:

The first six assignments of error refer entirely to the jurisdiction of the trial Court and it is conceded in the brief of plaintiff below, that this question of jurisdiction depends upon whether the defendant below, John A. Hudson, sold the check in question to the People's National Bank of Princess Anne, Maryland, or deposited it there for collection from the Security Trust Company in the city of Wilmington.

It is true, as contended by the plaintiff below, that whether a bank receiving from a customer a check endorsed in blank, which it places to his credit, becomes the owner of the check or a mere agent for collection, depends upon the intention of the parties. This is not disputed, but such intention must appear from the evidence.

In the case upon which the plaintiff in error relies, *Fayette National Bank v. Summers*, 105 *Va.* 689, 54 *S. E.* 862, 863, 7 *L. R. A.* (*N. S.*) 694, the Court said:

"The court instructs the jury that if they shall believe from the evidence that the plaintiff bank received the check * * * as a deposit to be treated as cash, and that such was the intention of the parties * * * at the time the check was received and deposited, then title to said check passed to the bank at that time. But if the jury shall believe from the evidence that the parties intended that the bank should not receive said check as cash, but only as an agent for collection, then title to said check did not vest in the bank at the time of the deposit."

This seems to be, according to the weight of authority, a correct statement of the law and where the material facts are undisputed, as they were in most of the cases cited, it becomes the duty of the trial court, under such law, to decide the question and instruct the jury accordingly.

Ordinarily, in cases of this kind, the intention of parties must be ascertained from their acts because very rarely is the intention expressed in words; and many courts have regarded certain acts as indicative of intention when a check, endorsed by a depositor, is received by the bank.

There are numerous cases cited by plaintiff in error upon this point, but particular reference will be made to only two of them.

In the leading case of *Burton v. United States*, 196 *U. S.* 283, 25 *S. Ct.* 243, 245, 49 *L. Ed.* 482, it appears from the Court's opinion that the indictment averred the receipt by the defendant of the different checks described therein at the city of St. Louis, in the State of Missouri, and the payment of the money thereon to the defendant at St. Louis, as compensation for services theretofore performed by the defendant for a certain company. It turned out on the trial that each of the checks was received by the defendant in the city of Washington, D. C., and by him there endorsed and deposited with the Riggs National Bank of that city and that they were afterwards duly paid by the Commonwealth Trust Company at St. Louis; that the amount of each was immediately credited by the Riggs National Bank to the account of the defendant with the bank, and the cashier testified that the defendant had the right, immediately after the credit was made, to draw out the whole or any part thereof, without waiting for the payment of the check at St. Louis.

In that case, the Court, after reciting the facts, continued as follows:

"There was no oral or special agreement made between the defendant and the bank at the time when any one of the checks was deposited and credit given for the amount thereof. The defendant had an account with the bank, took each check when it arrived, went to the bank, indorsed the check, which was payable to his order, and the bank took the check, placed the amount thereof to the credit of the defendant's account, and nothing further was said in regard to the matter. In other words, it was the ordinary case of the transfer or sale of the check by the defendant, and the purchase of it by the bank, and upon its delivery to the bank, under the circumstances stated, the title to the check passed to the bank, and it became the owner thereof. It was in no sense the agent of the defendant for the purpose of collecting the amount of the check from the trust company upon which it was drawn. From the time of the delivery of the check by the defendant to the bank, it became the owner of the check; it could have torn it up or thrown it in the fire or made any other use or disposition of it which it chose, and no right of defendant would

have been infringed. The testimony of Mr. Brice, the cashier of the Riggs National Bank, as to the custom of the bank when a check was not paid, of charging it up against the depositor's account, did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser of the check, and nothing more. There was nothing whatever in the evidence showing any agreement or understanding as to the effect of the transaction between the parties,—the defendant and the bank,—making it other than such as the law would imply from the facts already stated. The forwarding of the check 'for collection,' as stated by Mr. Brice, was not a collection for defendant by the bank as his agent. It was sent forward to be paid, and the Riggs bank was its owner when sent. With reference to the jurisdiction of the court over the offense described in the sixth and following counts in the indictment, the court held that if the checks were actually received by the defendant in Washington, and the money paid to him by the bank in that city, and the title and ownership of the checks passed to the bank at that time, the court in Missouri had no jurisdiction to try the offenses set forth in those counts of the indictment already referred to. There was no question that such was the fact, and it was error to submit the matter to the jury to find some other fact not supported by any evidence."

Mr. Justice Harlan delivered a vigorous dissenting opinion upon the point we are considering, saying in conclusion:

"It seems to me that in reversing the judgment upon the grounds stated in the opinion the court has sacrificed substance to mere form. The result, I submit, well illustrates the familiar maxim: *Qui haeret in litera haeret in cortice.*"

But the preponderance of the cases seems to be in conformity with the Court's decision in the *Burton Case,* which is frequently cited.

In another Federal case, *City of Douglas v. Federal Reserve Bank of Dallas,* 271 *U. S.* 489, 46 *S. Ct.* 554, 556, 70 *L. Ed.* 1051, the Court said:

"When paper is indorsed without restriction by a depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes owner of the paper, and in making the collection is not the agent for the depositor."

And later in the opinion the Supreme Court said:

"While there is not entire uniformity of opinion, the weight of authority supports the view that upon the deposit of paper unrestrictedly indorsed, and credit of the amount to the depositor's account, the bank becomes the owner of the paper, notwithstanding a custom or agreement to charge the paper back to the depositor in the event of dishonor."

The same principle is recognized in the following Maryland cases: *Tyson v. Western Nat. Bank,* 77 *Md.* 412, 26 *A.* 520, 521, 23 *L. R. A.* 161; *Ditch v. Western Nat. Bank,* 79 *Md.* 192, 29 *A.* 72, 138, 23 *L. R. A.* 164, 47 *Am. St. Rep.* 375; *Balcher v. Nat. Bank of Baltimore,* 151 *Md.* 514, 135 *A.* 383, 49 *A. L. R.* 1366.

It is unnecessary to refer to other cases to like effect cited by the defendant.

█ We do not understand that the state controverts the law as declared in the foregoing cases, but differentiates the present case therefrom because of this fact— that in the cited cases there was no dispute about the facts, no conflict in the evidence respecting the intention of the parties whereas in the instant case there was conflict caused by two witnesses who testified that the defendant below admitted to them at the time of his arrest that the check in question was deposited in the Maryland bank for collection.

The Court are of the opinion that such testimony did create a conflict in the evidence, and make a case different from those relied on by the defendant. And the Court are also of the opinion that because of such conflict in the evidence the Court below was justified in submitting to the jury the question whether the check was sold to the Maryland bank or deposited therein for collection which was the vital point in the case. The determination of that fact would establish the guilt or innocence of the defendant.

And so, while the weight of authority seems to sustain the proposition that a check indorsed, deposited and received by a bank like the one in question, constituted a sale to the bank, in the absence of any evidence showing a contrary intention, it is not necessary for this Court to express any opinion on that point.

█ The trial Court was not required to give the jury binding instructions to return a verdict of not guilty on

the ground that the Courts of this state had no jurisdiction to try the case, but properly charged the jury, that

"Whether it (the fraud charged) was so committed in this state is an important question for you to determine in deciding as to the guilt or innocence of the defendant."

What we have said disposes of the six assignments of error which relate to the jurisdiction of the trial Court.

■ We come now to the seventh assignment of error, which relates to an entirely different matter.

The seventh assignment is as follows:

"That the Court erred in allowing the Attorney-General and his Deputy to comment to the jury upon the failure to call character witnesses by the defendant."

The plaintiff in error and defendant in error are not in entire accord with regard to the remarks made to the jury by counsel for the State concerning the failure of the defendant below to call witnesses to prove his good character.

Unfortunately, these remarks were not taken down by the Court Stenographer when they were made, but the State admits in its brief that "Mr. Reinhardt (Deputy Attorney General), while addressing the jury, mentioned that the defense had not called any witnesses to testify to the good character of Mr. Hudson. Mr. Satterthwaite (Attorney-General) in his closing address to the jury, commented on the fact that the defendant had not put on character witnesses notwithstanding the fact that it was his right so to do, and further explained to the jury that if the defendant should call witnesses in support of his character, the State then would have the right to rebut such evidence. The remarks of both Mr. Satterthwaite and Mr. Reinhardt were objected to by the opposing counsel, but the Court overruled the objection."

It is not disputed that by the decided weight of authority outside this jurisdiction, such remarks as were admittedly made by the prosecuting officers in the trial of this

case, if objected to by counsel for the defendant and allowed by the Court, constitute reversible error.

The plaintiff below relies on two cases in our own state to sustain its position, viz.: *State v. Von Buren, 7 Boyce* (30 *Del.*) 79, 102 *A.* 981, 982, and *State v. Davis, 3 Penn.* 220, 50 *A.* 99, but concedes that there are a number of cases mentioned on the brief of defendant below which appear to be strongly opposed to the Delaware cases. This is undoubtedly true, and some of them are the following: *Lowdon v. U. S. (C. C. A.)*, 149 *F.* 673, 677; *Bennett v. State,* 86 *Ga.* 401, 12 *S. E.* 806, 12 *L. R. A.* 449, 22 *Am. St. Rep.* 465; *Fletcher v. State,* 49 *Ind.* 124, 19 *Am. Rep.* 673; *State v. Williams,* 122 *Iowa* 115, 97 *N. W.* 992; *State v. Scott,* 194 *Iowa* 777, 190 *N. W.* 370; *State v. Upham,* 38 *Me.* 261; *People v. Evans,* 72 *Mich.* 367, 40 *N. W.* 473; *People v. Boske,* 221 *Mich.* 129, 190 *N. W.* 656; *Cline v. State (Tex. Cr. App.)*, 71 *S. W.* 23.

We will not burden our opinion by quotations from many cases cited by plaintiff in error; it will be enough to quote from only one of them, *Lowdon v. U. S.,* which clearly expresses the general principle and the reasons therefor.

The Court said in that case:

"A defendant should not be subjected to a trial on the unsworn statements of an attorney conducting the prosecution, even when such statements are relevant to the case, for he would by this procedure be debarred the right of cross-examination and be also deprived of the right of offering evidence in rebuttal. It is not within the legitimate province of counsel to state facts pertinent to the issue that are not in evidence; nor can he assume in argument that such facts are in the case when they are not. And counsel cannot be permitted to make a statement of facts, which, under the rules of evidence, would not be received if offered, the natural tendency of such facts being to influence the finding of the jury. To adopt any other view would enable the advocate to put before the jury for their consideration statements not tested by cross-examination and facts which the law excludes. Having said this much in relation to the subject generally, we first consider an assignment of error made by Lowdon alone. He offered no evidence to prove his good character.

"He unquestionably had the right to rely on the legal presumption that his character was good. * * * The excerpt from the argument of the district attorney, numbered 1, is a strong appeal to the jury to presume that the character of Lowdon was bad because

he failed to offer evidence that it was good. This was not only getting out of the record, but going contrary to the legal presumption to which the defendant was entitled. It was assuming that the defendant's failure to offer such evidence created a presumption that his character was bad. This was not a legitimate and proper argument, and, on objection being made, the trial court should have stopped the district attorney and should have taken steps to remove, as far as possible, its influence upon the jury. But it is urged on behalf of the government that, conceding that the argument was not legitimate, it does not constitute reversible error. It is true that in like cases where the court sustains the defendant's objection to the argument and the words are at once withdrawn, it is held that the injurious effect is removed, and the incident does not constitute ground for a new trial. * * * But in this instance the district attorney did not withdraw the argument, and was sustained in making it by the action of the trial court. The principle which secures to every one accused of crime a fair and impartial trial on the evidence adduced is violated when the court permits the district attorney, against objection, to comment in argument to the jury upon the failure of the defendant to offer evidence of his previous good character."

We are satisfied that in the absence of the two Delaware cases the Court below would have sustained defendant's objection to the remarks or comments of the prosecuting officer. It can be easily understood why the Trial Judge, sitting alone, would not disregard a decision twice made by the same Court composed of three Judges. He felt bound by those decisions and no doubt thought that if a different rule should be established in this state it should be done by the highest Court. It was a natural and proper position for him to take. But the situation is different in this Court, and we feel that a rule should be declared different from the one that has heretofore prevailed. And we have this feeling, not so much because of the decisions in other jurisdictions, but because we are convinced that the practice permitted here is unjust to the defendant, contrary to the principles of the common law and to the spirit of our Constitution which in *Article* 1, *Section* 7, provides that "in all criminal prosecutions, the accused hath a right * * * to meet the witnesses in their examination face to face." And we are not embarrassed by the two Delaware cases because they are found, upon examination, to be based

entirely upon an unreported case which rested in the recollection of the Attorney-General who tried it. In the case of *State v. Von Buren,* it appears from the report that "Counsel for the accused interposed objection to the comment of the Attorney-General to the jury upon the fact that the defendant had failed to prove his good reputation for honesty and fair dealing." The objection was overruled upon the authority of *State v. Davis.* In the last mentioned case the Attorney-General, in his argument to the jury, commented on the fact that the defendant had offered no proof as to his good character. This was objected to by defendant's counsel. The Attorney-General insisted upon his right, claiming that the Court had allowed such comments notwithstanding objection by defendant in the unreported case of *State v. Pullen,* tried at the April Term, 1901, in Kent County. The Court said: "We overrule the objection, on the authority of the decision in the case of *State v. Pullen.*"

It clearly appears, therefore, that the only authority in this state that supports the position of the State is an unreported case of which the Court that tried the *Davis Case* knew nothing except what the Attorney-General stated, and of the facts of which and the language used by the Court in making the ruling, the present Court has no knowledge. We cannot, therefore, regard it as an authority in this state. Our conclusion is, that the question now under consideration is an open one here and should be determined in conformity with the weight of authority in other states if such authority appeals to the Court as sound and reasonable.

But independent of the cases elsewhere we are of the opinion that a prosecuting officer should not be permitted to comment to the jury on defendant's failure to prove a good reputation and especially when defendant's counsel has objected to such comment. The evident purpose of the comment is to remove from the mind of the jury the legal

presumption that the reputation of the defendant is good when there is no evidence to the contrary. There could be no evidence to the contrary unless the defendant had introduced testimony in proof of his good character. In the present case the prosecuting officers not only commented on something that was not in evidence, but sought to do indirectly what they could not do directly, that is, put the character of the defendant in issue when he had not attempted to prove it good. Very few, if any, of the cases question the impropriety of such comments as were made in the present case; the real question has been whether such comments constituted reversible error. The answer to this question depends upon the natural and probable effect of such comments on the jury, and whether prejudicial to the defendant. A jury composed of lawyers would probably not be influenced by the comments, but it might be very different with a jury of laymen. Such a jury usually listens intently to the prosecuting officer and is particularly impressed by his closing argument. And it must be borne in mind that to that argument the defendant cannot reply. He can only appeal to the Court for protection against any unwarranted or improper comment by the State respecting his character and if the Court overrules his objection, the jury is more than likely to think that both the prosecuting officer and the Court believe his character is bad. Theoretically, of course, the jury is to be influenced only by the evidence, but they cannot be expected to know that the State has injected something into the case which is not in evidence, when the Court says it is unobjectionable. In very many cases the reputation or character of a person on trial is a matter of importance and not a trifling circumstance in the minds of the jury. No doubt it sometimes tips the scale in weighing the evidence, and cannot be said to be covered or cured by the usual charge on reasonable doubt. It is a basic principle of criminal law and procedure that a defendant shall be confronted by the witnesses

against him and have the right to cross-examine them. But it is manifest that such right is to some extent taken away or weakened if the prosecuting officer can, with the approval of the Court, make statements to the jury unsupported by any evidence, which amount to at least an insinuation that the defendant has a bad character; and make them at a time when the defendant is not permitted to refute the insinuation either by evidence or argument. There can be no doubt that such statements are intended to make the jury question the good character of the accused and may be sometimes equivalent to saying that his character is bad.

We are constrained to reverse the judgment of the lower Court on the ground covered by the seventh assignment of error, viz.: That the Attorney-General and his Deputy were permitted, over objection of defendant's counsel, to comment as they did on the failure of the defendant to prove a good character, the defendant not having introduced any character evidence, and the Court failing to instruct the jury to disregard such comments.