148 So. 909

### S. E. HALL, Inc., v. FARMERS' TRUST & SAVINGS BANK OF LOCKPORT et al.

### No. 31747.

May 29, 1933.

Harvey Peltier and Hubert A. Lafargue, both of Thibodaux, for appellants.

Francis L. Knobloch, of Thibodaux, for appellee.

OVERTON, Justice.

This is a suit to have it decreed that the proceeds of four drafts, amounting to $2,508.-93, which may be referred to as the Sherman, Sanders, McCleish, and Bailey drafts, drawn by plaintiff to the order of the Farmers' Trust & Savings Bank of Lockport, La., the first for $652.06, the second for $681.46, the third for $497.36, and the fourth for $678.05, are the property of plaintiff; that the proceeds be ordered paid forthwith to plaintiff; and

that its lien and privilege on the assets of the bank as well as upon the proceeds of the drafts, as provided by Act No. 63 of 1926, be recognized and enforced.

The four drafts represent the purchase price of corn sold to the several drawees named. Each was deposited in the Farmers' Trust & Savings Bank of Lockport, with bill of lading attached, January 10, 1931, except one of them, which was deposited on January 16, 1931. The deposits were made on three slips, two on the first slip and one on each of the remaining slips. They were deposited as checks, that being the closest description, printed on the slips. On each deposit slip, at the bottom thereof, there appears the following in printed form, to wit: "All checks & drafts, except on us, credited subject to final payment."

The bank was closed on January 20, 1931, by the state bank examiner, as insolvent. Possession of its assets was taken by him, and liquidators were appointed, who are parties to this suit. The proceeds of not one of the drafts reached the bank until after it was closed. The Sherman and Sanders drafts were paid at Haynesville, La., on January 20, 1931, the day the bank was closed, and the proceeds were not received by the Farmers' Trust & Savings Bank of Lockport until the next day. The McCleish draft was paid on January 16, 1931, but the proceeds thereof were not received by the defendant bank until January 21, 1931, the day after the closing of the bank, and the Bailey draft was not paid until January 21, 1931, following the declared insolvency of the bank, and the proceeds were not received by the bank at Lockport until nine days later.

■ As to whether the drafts were sold to the Farmers' Trust & Savings Bank, or were placed there for collection, the proceeds to be deposited to plaintiff's account when collected, or were deposited for collection and remittance, depends wholly upon the intention of the parties, to be determined from the facts surrounding the transactions. Hudson v. State of Delaware (Del. Sup.) 156 A. 881, 80 A. L. R. 219.

■■ Here, the deposit slips, which were accepted by the bank, state that all checks and drafts, except those drawn on the bank, will be credited, subject to final payment. This statement indicates that it was not the intention of the parties that title to the drafts should pass to the bank, for the credit to be given was conditional in character, and this fact is inconsistent with ownership. Carson v. Federal Reserve Bank, 226 App. Div. 225, 235 N. Y. S. 197, 14 A. B. R. (N. S.) 58; Id., 133 Misc. 277, 231 N. Y. S. 620; Annotations in 11 A. L. R. 1071 and 42 A. L. R. 502.

The amount of each draft, in accordance with the statement at the bottom of the deposit slips, was entered in the books of the bank to the credit of plaintiff. While it is disputed as to whether plaintiff had a right to draw against the amounts so deposited, the unmistakable weight of the evidence shows that it did not have the right to draw against the amounts until the drafts were paid and the proceeds received by the bank, and it does not admit of question that no draft or check was honored against these amounts. These are additional facts showing that the bank did not purchase the drafts, and we conclude that it did not.

When plaintiff deposited the drafts, it did so, we think, for collection and deposit to its credit, it being implied, as a matter of course, that, if the proceeds were not received by the bank while it was a going concern, that they would be remitted to plaintiff, and not put into the mass of the assets of the bank, for no one, it may be presumed, would deposit money in a defunct and insolvent bank, and the bank no longer being a going concern, could not receive and credit the deposit. All that it could do in such a case as the present would be to remit the proceeds to the owner of the drafts, for the bank had ceased to have power and right to make a conditional credit an absolute one.

█ Act No. 63 of 1926 grants a privilege to any one, who places in the hands of a bank, as his agent, for collection and remittance, or for delivery to him, among other instruments, any check, order, or draft, and has done so not for deposit (meaning the kind of deposit where title passes), and the bank realizes or collects any money on the instrument, and has not deposited it to the credit of the one delivering the instrument, a privilege, superior to all depositors of the bank, all creditors of the bank having no privilege, and all general privileges, except law and judicial charges. The act, in making it a condition to the existence of the privilege that the proceeds of the instrument be not deposited by the bank to the credit of its principal, means that the money must not be deposited unconditionally to the credit of the principal with his authority. This occurs where the credit given the principal is conditional and made in anticipation, and the proceeds are not received until the bank

ceases to operate as a going concern. Plaintiff comes within the statute and is entitled to the privilege.

The trial court rendered judgment for plaintiff in accordance with the prayer of his petition.

The judgment is affirmed.

ST. PAUL, J., concurs in the decree.