In re CANAL BANK & TRUST CO. IN LIQUIDATION (Intervention of E. C. PALMER & CO., Limited).

No. 14824.

Court of Appeal of Louisiana. Orleans.
May 7, 1934.

Dufour, St. Paul, Levy & Miceli, of New Orleans (Rene J. Waguespack, of New Orleans, of counsel), for appellant.

Henican & Carriere, of New Orleans, for appellee.

WESTERFIELD, Judge.

E. C. Palmer & Co., Limited, filed its petition of intervention in the liquidation proceedings of the Canal Bank & Trust Company on June 30, 1933, claiming that it was entitled to the payment of $327.60 in preference and priority to all other creditors by virtue of a lien and privilege conferred by Act No. 63 of 1926. There was judgment below as prayed for, and the liquidators of the bank have appealed.

The case was tried below upon an agreed stipulation of facts, which are substantially as follows:

Palmer & Co., on March 1, 1933, deposited three checks drawn to its order with the Canal Bank & Trust Company, one of the Second National Bank of Houston, Tex., drawn on the Chase National Bank of New York, for $471.90, one of the American National Bank, Pensacola, Fla., drawn on the Central Hanover Bank & Trust Company, New York, for $6.21, and the third of the Enterprise Publishing Company on the Citizens' National Bank of Cameron, Tex., for $25.90. The two first described items were forwarded to the Chase National Bank of New York on the same day that they were deposited for collection, and on the 3d day of March, 1933, the proceeds were credited to the account of the Canal Bank & Trust Company with the Chase National Bank. The third item was collected through the Federal Reserve Bank of Atlanta, New Orleans Branch, and the proceeds credited to the ac-

count of the Canal Bank & Trust Company with that institution on March 18, 1933. The day on which the deposit was made by intervener, March 1, 1933, the Canal Bank & Trust Company was open for business as usual and doing a general banking business in the city of New Orleans. On the afternoon of that day the New Orleans Clearing House Association, with the approval of the Governor of the State of Louisiana, adopted a resolution, the effect of which was to close all banks in the city of New Orleans on March 2, 1933. The following day, March 3d, another resolution having been adopted by the Clearing House Association in the meantime, the Canal Bank & Trust Company and other state banking institutions reopened for business on a qualified basis, one effect of which was to limit the payment to depositors to 5 per cent. of their balances with the bank. Thereafter, on March 6, 1933, in compliance with certain regulations of the United States Treasury and executive orders by the President of the United States, the Canal Bank & Trust Company and other banks again closed their doors and remained closed until March 20, 1933, when it again opened on the restricted basis under which it operated from March 3rd to March 6th. On May 20, 1933, the bank examiner took charge and the bank was formally placed in liquidation. For a more detailed statement of the banking situation as it affected the Canal Bank & Trust Company and others similarly situated during the recent crisis in banking circles, both state and national, reference is made to the statement of facts in the case of In re Liquidation of Canal Bank & Trust Co., Intervention of Harry H. Wainer, 178 La. 961, 152 So. 578, of the Supreme Court of Louisiana, decided January 2, 1934.

Section 1 of Act No. 63 of 1926 reads as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That when any bank receives as agent (whether as agent of another bank or of any person, firm or corporation) for collection and remittance or delivery to its principal and not for deposit any bill, note, check, order, draft, bond, receipt, bill of lading, or other evidence of indebtedness, or other instrument, and collects or realizes any money on the same, and has not deposited same to the credit of said principal, the principal shall have a privilege on all of the property and assets of said agent bank for the amount so collected or realized by said agent bank, which privilege shall be superior to the claims of all depositors of said agent bank,

the claims of all creditors of said agent bank having no privilege and to all other general privileges on the property and assets of said agent bank, except those for law and judicial charges."

It is the contention of the liquidator that this act only grants a privilege to persons placing items in a bank "for collection and remittance or delivery to its principal and not for deposit," and that since, under the agreed statement of facts in this case, the several items deposited by intervener were immediately credited to his account with the privilege of checking against them, the act does not apply for the reason that the items were collected and the money realized and deposited to the credit of Palmer & Co., the effect of which was to change the relation of principal and agent, formerly existing between the bank and Palmer & Co., concerning these items, into that of debtor and creditor.

In the case of S. E. Hall, Inc., v. Farmers' Trust & Savings Bank, 177 La. 659, 148 So. 909, the court said (Syllabi):

"Whether drafts were sold to bank or placed there for collection or deposited for collection and remittance depends wholly on intention of parties, to be determined from facts surrounding transactions.

"Where drafts were deposited for collection and deposited to credit of plaintiff, money received by bank after insolvency would be remitted to owner of draft, since bank ceased to have power to make conditional credit absolute (Act No. 63 of 1926)."

The facts in the Hall Case are said to be very different from those of the present case, particularly for the reason that the drafts in that case were deposited for collection and not credited to the depositor's account and because, when the drafts in the Hall Case were collected, the bank was not solvent, whereas in this case, on March 3 and 18, 1933, and until the 20th of May following, this bank was solvent and doing business, on a restricted basis to be sure, but nevertheless doing business and not officially insolvent; therefore the only claim which the intervener could have would be that of an ordinary creditor as against the assets of the bank, its debtor, not that of a privileged creditor under Act No. 63 of 1926. It is pointed out that in Louisiana equitable liens are not recognized. Boylan's Detective Agency & Protection Police v. Brown & Co., 157 La. 325, 102 So. 407; Young v. Teutonia Bank & Trust Co., 134 La. 879, 64 So. 806.

The first question to be considered is the effect of the immediate credit to the account

of intervener of the amount of the items deposited on March 1, 1933. In 11 A. L. R. 1045 we read the following:

"There is no dissent from the proposition that the passing of title to commercial paper upon a transfer thereof to a bank by which it is credited to the depositor's account at the time of deposit, or is to be credited when the proceeds are received is fundamentally a question of intention. Where direct evidence of such intent can be obtained, such as a contract expressly providing as to the passing of title, the question is relatively simple."

To the same effect, see Hudson v. State of Delaware (Del. Sup.) 156 A. 881, 80 A. L. R. 219, quoted with approval in Hall v. Farmers' Trust & Savings Bank, in Liquidation, supra.

The deposit slip in use by the Canal Bank contained the following:

"3. Checks, drafts and other items drawn on other cities, will be handled subject to the following terms and conditions:

"(a) This Bank will act only as the agent of the customer from which it receives such items and will assume no responsibility or liability except for its own negligence, nor will it assume any responsibility or liability for any items lost in the mails. * * *

"(c) Each collecting agent is the agent of the customer, and no collecting agent shall be liable for any loss growing out of neglect, default or failure of another collecting agent. * * *

"(e) The amount of any check for which payment in actually and finally collected funds is not received, may be charged back to the customer, regardless of whether or not the check itself can be returned."

The effect of such stipulations in the deposit slip is to create a contract of agency between the depositor and the bank. 11 A. L. R. 1071, note; 68 A. L. R. 735, note; In re Bank of Minn., South Park Foundry, etc., v. Chicago Great Western R. R., 75 Minn. 186, 77 N. W. 796; Hall v. Farmers' Trust & Savings Bank, supra; American Savings Bank & Tr. Co. v. Dennis, 90 Wash. 547, 156 P. 559; La. Ice Co. v. State National Bank, McGloin (La.) 181. In the case last referred to, at page 185, the court, speaking of a similar situation, said:

"The credit is only conditional, and may be cancelled, and the check returned, should the latter be dishonored. The depositor remains owner of the paper, and the bank merely the agent. Morse on Banks and Banking, Ed. 1879, pp. 427, 428; Scott v. Ocean Bank, 23 N. Y. 289; Giles v. Perkins, 9 East. 12; National Gold Bank v. McDonald, 51 Cal. 64 [21 Am. Rep. 697]."

Indeed, it would be a most unusual policy for a bank to buy the checks and drafts of its customers and to credit their account with the proceeds at par, assuming all the responsibilities of ownership and the risk of collection, and it is a matter of common knowledge that the universal custom of the banks everywhere is to the contrary. The wording of all deposit slips contains similar language, differing somewhat in phraseology, perhaps, but all to the general effect that the depositor assumes all risk of collection of the items deposited. In fact, the expressive slang "rubber check" has come to have a well-understood meaning as a check which, when an effort to collect it is made by the payee's bank, is dishonored, or, as the vernacular has it, "bounces back" to the payee after his account with his bank has been debited with the amount of the check. Our conclusion on this point is that the several items making up the claim of the intervener were not the property of the bank, notwithstanding the fact that an amount equal to their face had been credited to the account of E. C. Palmer & Co., its depositor.

It is contended that on March 3d and March 18th the Canal Bank had not been declared insolvent and was, therefore, a going concern to the same extent as this bank was held to be a going concern in the Wainer Case, supra, where it was said that the restriction upon its operations did not prevent compensation taking place as between the bank and its depositors. However, it was not a going concern to the extent that Palmer & Co., Limited, or any of its other depositors, for that matter, could have withdrawn more than 5 per cent. of their balances. After the collection of these items there never was a time when Palmer & Co. could have withdrawn more than this small proportion of the money realized therefrom, until just before the liquidation proceedings had been initiated, when the bank, by borrowing from a governmental agency, paid its depositors 30 per cent., which Palmer & Co. received without prejudice to their right to raise the issues which they have presented in this case. The agency of the bank in the collecting of intervener's funds could not, therefore, have terminated.

We believe the case is with the intervener on all points. Consequently, and for the reasons herein assigned, the judgment appealed from is affirmed.

Affirmed.