HIGGINS, Justice
(dissenting).
My views are not in accord with the majority opinion.
In the agreed statement of facts it was stipulated:
“(5) That if H. H. Chambliss and D. U. Maddox, officers of said Commercial National Bank & Trust Company were called to the *348 stand they would each testify that remittances for Jones County to cover prior maturities of this series of bonds to the Hibernia Bank & Trust Company were made in exactly the same way as this one, accompanied by letters similar to Exhibit ‘0,’ without any actual notice of the manner in which said Hibernia Bank & Trust Company handled the funds between the receipt thereof and payment of bonds and coupons.
“That the Hibernia Bank & Trust Company sent to the Clerk of the Board of Supervisors of Jones County, Mississippi, statements as of March 1,1933, May 30,1932, and November 13, 1932, respectively, copies of which statements are attached hereto and will be offered and filed in evidence and marked Defendants ‘4,’ ‘5’ and ‘6’ respectively; that said statements were receipted for by the Secretary of the Board of Supervisors, which said receipts are annexed hereto and will be offered and filed in evidence and marked Defendants ‘7,’ ‘8’ and ‘9,’ respectively; that the said three statements are samples and conform with similar statements rendered by the Hibernia Bank & Trust Company to the Board of Supervisors of Jones County, Mississippi, covering previous remittances by Jones County to the Hibernia Bank & Trust Company for the payment of bonds and coupons maturity at six months intervals prior thereto.
“(6) That the funds received from Jones County for the payments of the bonds and coupons due March 2, 1933, as well as the funds received by the Hibernia Bank & Trust Company for the payment of prior maturities of bonds and coupons of the same series, were not segregated by the Hibernia Bank & Trust Company, but were co-mingled with the general funds of the Hibernia Bank & Trust Company.
“(7) That the holders of bonds and coupons of the said series of Jones County which matures March 2, 1933 and at six months intervals prior thereto, did not present their bonds and coupons for payment promptly on the maturity date and did not present their bonds and coupons for payment all at the same time, as the said bonds and coupons were not all held by the same parties; and that the manner in which the said account was handled by the Hibernia Bank & Trust Company and the dates on which maturing bonds and coupons were paid is evidenced by the ledger sheets of the Hibernia Bank & Trust Company which are attached hereto and which may be offered and filed in evidence and marked Defendant ‘10’ and ‘11’ respectively ; it is being agreed by and between counsel for plaintiff and defendant that the said sheets are samples of similar ledger sheets of the Hibernia Bank & Trust Company covering bonds and coupons maturing at previous dates.”
“(9) That Jones County, Mississippi had no ‘Checking Account’ with the Hibernia Bank & Trust Company, but that there was set up on the books of the Hibernia Bank & Trust Company a ‘Jones County Bonds Payment Account,’ as well as another account known as ‘Jones County 6% Road Bond Coupon Account’ and that in said Bonds Payment Account and in said Coupon Account funds sent by Jones County for the payment of Bonds and Coupons were entered by the Hibernia Bank & Trust Company as shown by the ledger sheets hereinabove referred to and *350 marked for identification Exhibits Defendant ‘L,’ ‘3’ and ‘10’ and ‘11,’ respectively, and that when said bonds and coupons were paid by Hibernia Bank & Trust Company that said accounts were debited with the amounts and the dates of the said payments.
“(10) That the sum of seven thousand nine hundred twenty and 00/100 ($7,920.00) dollars sent to the Hibernia Bank <Sp Trust Company by Jones County in the form of the check referred to in paragraph four of the stipulations was entered in the books of the Hibernia Bank & Trust Company as follows, to-wit: six thousand and no/100 ($6,000.00) dollars in ‘Jones County, Bonds Payment Account’ under date of February 24, 1933, the said six thousand and no/100 ($6,000.00) dollars being
Coupon Number , Due Date DEBIT Description Amount Date CREDIT Description Amount Balance
29 9/2/30 Coupons $30.00 11/13/30 Last Balance $30.00 —O—
30 3/2/31 ■ “ 2,280.00 2/26/31 Deposit 2,280.00 —0—
31 9/2/31 “ 2,100.00 9/1/31 “ 2,100.00 —0—
32 3/2/32 “ 2,100.00 2/29/32 “ 2,100.00 —0—
6,510.00 6,510.00 —0—
entered in the column headed ‘Credits’ with the entry ‘By deposit to pay bonds due 3/2/33’ with the balance of said funds, to-wit, the sum of one thousand nine hundred twenty and no/100 ($1,920.00) dollars being entered in the ‘Jones County, Mississippi Coupon Account’ under date of February 24, 1933, in the column headed ‘Credits’ with the entry ‘Deposit’ under the heading ‘Coupon No. 34, maturity March 2, 1933,’ all of which will more fully appear from the photostats of the ledger accounts. * * * ”
One of the statements sent by the Hibernia Bank & Trust Company to the board of supervisors of Jones county, and the acknowledgment thereof, are as follows:
“Hibernia Bank & Trust Company
“New Orleans, La., 5/31/32
“Mr. U. V. Busby, Chancery Clerk,
“Jones County, Miss.
“Laurel, Miss.
“No. 3905.
“Following is a statement of your Supervisors Dist. #2 6% Bonds coupon account, as of close of business 5/30/32, together with cancelled coupons as evidenced by said statement.
“Please verify the correctness of this statement, and return the attached receipt properly signed.
“(Acknowledgment) No. 3905.
“IMPORTANT — SIGN AND RETURN THIS RECEIPT.
“Received from the Hibernia Bank & Trust Company, cancelled coupons aggregating $6,-510.00, as evidenced by statement rendered at close of business 5/30/32.
“Jones County, Miss.
“By W. L. Busby, Clerk,
“By Chas. T. Walters, D. O.”
It is the uniform jurisprudence of this state that statutes conferring a privilege must be strictly construed and cannot be extended by implication or analogy.
*352 In the case of Boylan’s Detective A. & P. Police v. Arthur A. Brown & Co., 157 La. 325, 102 So. 417, 419, it was held:
“No considerations of equity can enter into the determination of the right of privilege. If the law does not grant the privilege, the court is powerless .to do so. The rule is too familiar to need citation of authority that privileges are never allowed, except when expressly granted, and only by virtue of compliance with the legal requisites essential to their creation and existence.” ■
In the case of Ittman et al. v. Kracke & Flanders Co., 12 La. App. 672, 127 So. 106, 107, it was held:
“In order to establish a lien and privilege * * * the defendant in rule must be able to invoke some pertinent and applicable codal or statutory provision creating such a lien or privilege.”
In the case of Dodd v. Horan (La. App.) 121 So. 323 (syllabus) it was held:
“Under Civ. Code art. 3185, privileges are stricti juris, are not created by covenant, and can be allowed only in cases where they are expressly granted by statute or Code.”
See, also. Rod River Const. Co. v. Pierce Petroleum Corp., 165 La. 565, 115 So. 752.
An analysis of the provisions of the statute (Act No. 63 of 1926) shows that three things must concur before the statute is applicable:
(1)The holder or owner of the cheek, draft, note, etc., must send it to the bank as agent, for collection and remittance or delivery to the principal.
(2) There must be an actual collection or realizing by the bank, as agent, of the proceeds represented by the check, draft, note, etc.
(3) There must also be an agreement, expressed or implied, that the check, draft, or note, etc., was received for collection and remittance or delivery and not for deposit.
The word “deposit,” as used in the act, is not synonymous with “checking account.” It is a general term and it obviously covers or includes not only checking accounts and savings accounts, but also any kind of an account where a special deposit is made. In short, it is immaterial what kind of a deposit the owner and forwarder of the paper impliedly or expressly authorizes the bank to make, for if he does authorize the making of a deposit of the proceeds of the check, etc., the act under its express provisions has no application to the transaction. Of course, the making of any kind of deposit requires a bookkeeping entry.
The letter accompanying the check involved in this litigation did not expressly state whether or not the proceeds realized from the collection of the check were to be deposited. In short, the letter was silent on that subject. In the absence of expressed directions to the bank relative depositing the funds realized from the check, we must look to the intentions of the parties, which must be gathered and determined from the facts surrounding the transaction. S. E. Hall, Inc., v. Farmers’ Trust & Savings Bank of Lockport, 177 La. 659, 148 So. 909.
The fact that the bonds and coupons were owned by various parties and the check was for a lump sum, which covered all of the bonds’and coupons maturing on March 2d. *354 makes it obvious that intervener authorized the bank to convert the check into cash. This was done on February 24,1933, and the bonds did not mature nor did the coupons become due until March 2, 1933. In the meantime, .vhat was the bank to do with the funds? Keep them in species, or make a deposit of them for a special purpose? It could hardly be said that intervener intended that the money was to be kept segregated and each bond and coupon holder be paid from that particular fund. If such had been the intention of the intervener, it would have so instructed the bank in the letter accompanying the check. The officers of the bank adopted the reasonable and business-like method of depositing the money for the purpose of payment. From this deposit, the respective amounts due the owners of the bonds and coupons who presented them on March 2d, and those presenting them tardily, could be paid. If there was any doubt that intervener contemplated a deposit for the purpose of payment, that doubt is eliminated by intervener’s conduct in acknowledging receipt of the semiannual statements, which showed that the money was deposited in a special account for the purpose of paying the bonds and coupons, without protest, or complaint, or request that the funds be segregated. Intervener’s silence under the circumstances amounted to approval, acquiescence, and consent to the method employed by the bank in depositing the funds. This is especially true, as the account had been running since February 28, 1927, and in the agreed statement of facts it is stipulated that the method of handling the semiannual maturities, as far as remittance of the check, depositing the proceeds thereof, and payment of the coupons and bonds are concerned, was identical. The mere fact that the two officials of the Commercial National Bank & Trust Company, of Laurel, Miss., if produced as witnesses, would testify that, while all these transactions were handled exactly in the same way, they had no actual knowledge of the method adopted by the Hibernia Bank in handling the proceeds of the check, is immaterial, because the intervener for whom the bank officials at Laurel, Miss., acted as agent, had actual knowledge from the various statements received that the proceeds of the checks had been deposited in a special account in the Hibernia Bank, as a medium of payment of the coupons and bonds.
In the instant case the deposit was made for a special purpose and intervener had the right to withdraw the money from»the bank at any time before it was paid by simply ordering the bank to return the money, because the principal can revoke the authority of his agent before the agent performs the act authorized. Staten Island, etc., Club v. Farmers’ Loan & Trust Co., 41 App. Div. 321, 58 N. Y. S. 460.
It is clear that the statute does not create in favor of a special depositor a lien and privilege on the assets of the bank, to secure the deposit in the event the bank fails to carry out the purpose for which the special deposit was made, or return the money to the depositor.
If a person makes a special deposit of cash with a bank for the purpose of liquidating future maturing obligations, and the bank fails to pay out the money in accordance with the agreement of deposit, or to return the money to the depositor, the act does not give *356 the depositor a lien and privilege on the assets of the bank. Practically speaking that is exactly what was done in the instant case. Intervener never sent the check for the purpose of collection, remittance, or delivery, but for the purpose of furnishing' cash to be deposited and from which deposit the future maturing obligations, i. e., the bonds and coupons, were to be paid. The check was merely incidental to the main purpose of the transaction, i. e.,.furnishing cash to be deposited to pay the maturing bonds and coupons. While it is true that as between the bank and the depositor an injustice has been done, it must be remembered that this is really a contest between other innocent creditors and depositors and the intervener, a special depositor. The Legislature having confined the lien and privilege in favor of the owner of the check, note, draft, etc., and the proceeds thereof in the usual collection, remittance, and delivery banking transaction and not having extended it to a remittance for deposit for the purpose of payment, intervener has no lien.
Having concluded that the intervener contemplated when remitting the check accompanied by the letter that the funds realized from the check would be deposited in an account as a medium of payment, and having also acquiesced in this procedure and method of handling the money by the bank as a result of actual knowledge imparted to it through the semiannual statements furnished intervener by the bank, it follows that Act No. 63 of 1926 has no application to this case, because the statute does not apply to cases where the funds are deposited with the expressed or implied consent of the depositor.
Now, since the bank, as agent for intervener, permitted the proceeds of the check to be commingled with the bank’s general funds, so that it is impossible to trace or identify the res, intervener must assert its claim in the liquidation proceedings as an ordinary creditor. Tropical Printing Co., Inc., v. Union Title Guarantee Co., Inc., 180 La. 702, 157 So. 534, decided October 2, 1934, and authorities therein cited.
In the case of Gulley v. Wisdom, 69 F.(2d) 495, decided by the United States Circuit Court of Appeals for the Fifth Circuit, the court said:
“Claimant to establish preferential lien against assets of insolvent bank has burden to show what he deposited and to trace it, receiver not being required to prove where the money in his hands came from.”
In the case of Wisdom v. Keen, 69 F.(2d) 349—United States Circuit Court of Appeals, Fifth Circuit, where the bank agreed to hold 81,200 in cash, in escrow, to be delivered, not paid — the court said:
“This is another of the multiplying cases in which the ratable distribution to all creditors of the assets of a failed national bank under 12 USCA § 194 is sought to be disturbed by the assertion of a lien upon them because of a commingled trust fund. * * *
“The obligation was perfect to segregate and hold the cash. Equity if dealing with the bank alone might well consider that it had done what it should have done and might well hold it to the consequences. American National Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310. But in dealing with the distribution of the assets of an insolvent *358 national bank and with the requirement of ratable dividends to all claimants a more stringent adherence to what was actually-done is proper. Here the bank agreed to seg-. regate a trust res but never did it. By their mutual intent the' bank’s relation to Keen was that of a trustee rather than a debtor, but .there is still no identifiable trust res traceable as such, but only a liability for a breach of trust in failing to create the res. This liability, absent a statutory priority or lien, has no higher dignity than ether general liabilities. As tp every general creditor the bank has failed to do what it ought to have done and what it promised, to do. The federal statute puts all suoh claimants on an equality. * * * (Italics ours.)
See, also, Pottorff v. Key (C. C. A.) 67 F.(2d) 833; Carcaba v. McNair (C. C. A.) 68 F.(2d) 795.
For the reasons assigned, I respectfully dissent.